**UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

**No. 92 C 2669.**

United States District Court, N.D. Illinois, E.D.

June 8, 1993.

Gordon G. Waldron, Zachary Alan Tobin, Sharon Ann Seeley, John C. Hendrickson, Celeste Harriet Davis, U.S. E.E.O.C., Chicago, IL, for plaintiff.

Michael A. Warner, Elizabeth H. Skalitzky, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for defendant.

## MEMORANDUM, OPINION AND ORDER

ANDERSEN, District Judge.

Plaintiff, the United States Equal Employment Opportunity Commission (EEOC), brings a motion for partial summary judgment and defendant, General Motors Corporation (GM), brings a cross-motion for summary judgment pursuant to Fed.R.Civ.P. 56. For the following reasons, EEOC's motion is granted and GM's motion is denied.

### FACTS

The facts are undisputed. Since 1941, GM has had an "open door" policy, an informal dispute resolution procedure, through which salaried employees[1] may seek investigation and resolution of employment-related problems. Under the "open door" policy, an employee makes a complaint to his or her supervisor. If not resolved, GM staff members in the personnel department at the employee's facility investigate and attempt to resolve the complaint. If the employee is dissatisfied with the Personnel Director's determination at the local facility or divisional level, he or she may request review by GM's Central Office in Detroit, Michigan. The Central Office reviews the charge and, if necessary, reinvestigates. A final determination is then made as to whether GM will voluntarily provide a remedy to the employee's satisfaction.

When an employee files a claim with the EEOC or another administrative agency, GM "defers" allowance of use by an employee of the "open door" policy until the matter is resolved with the agency. GM staff in the local personnel department still investigate the charge and report their findings to the Central Office, but a determination is made as to whether and to what extent GM will resolve the complaint through the EEOC's conciliation procedures, rather than through its own procedures. Thus, the "open door" procedure is unavailable to a salaried employee once he or she files a grievance with the EEOC or another agency.

In this case, Mr. Irvin Talbert, in accordance with the "open door" policy, wrote to GM's Vice President of Personnel Administration concerning his being laid off. Within days, Mr. Talbert filed a charge of discrimination with the EEOC regarding the same issue. Pursuant to GM's policy, Mr. Talbert was informed that the personnel office could not respond to his "open door" policy complaint while his charge was pending with the EEOC, but that he would be free to pursue resolution of his complaint through the "open door" policy if he chose to withdraw his EEOC charge. Mr. Talbert then filed another charge with the EEOC, alleging that GM's policy regarding "open door" procedures constituted unlawful retaliation.

The EEOC and GM were unable to resolve the charge in conciliation, and the EEOC filed suit on behalf of Mr. Talbert and others similarly situated pursuant to 42 U.S.C. § 2000e–5(f)(1) and 29 U.S.C. § 626(b)[2], alleging that GM's termination of an employee benefit in response to an EEOC filing is discriminatory in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. (Title VII), and Section 4(d) of the Age Discrimination and Employment Act, 29 U.S.C. § 621, et seq. (ADEA). GM maintains that its deferral of its "open door" procedures pending the outcome of an EEOC charge does not constitute an adverse action and therefore is not discriminatory under Title VII or under the ADEA.

EEOC brings a motion for partial summary judgment in which it asks the court to enter a judgment that GM's practice of suspending its procedures violates federal law; to enjoin GM from suspending its "open door" procedures while an employee or former employee has a charge pending with the EEOC; to reopen its "open door" process to persons whose EEOC charges are still pending and who were denied access to the process because they had filed EEOC charges; to order GM to advise employees of the above orders by posted notice or otherwise; and to strike GM's second and third affirmative defenses to EEOC's complaint.

GM brings a motion for summary judgment asking the court to enter judgment in its favor on all of the claims asserted in the complaint, or in the alternative, to limit the remedy to prospective relief only.

### DISCUSSION

■ Summary judgment is appropriate when the movant demonstrates "the absence of a genuine issue as to any material fact,

---

1. The policy applies to employees who are not organized under a collective bargaining agreement containing its own arbitration and grievance procedures.

2. As amended by Section 2 of Reorganization Plan No. 1 of 1978, 92 Stat. 3781, and Public Law 98–532 (1984), 98 Stat. 2705.

and for these purposes the material ... lodged must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The non-moving party may not merely rest on its pleadings, but must demonstrate, through specific evidence, that there remains a genuine issue of triable fact. *Lister v. Stark,* 942 F.2d 1183, 1187 (7th Cir.1991) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)); *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims...." *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2553.

### Title VII and the ADEA

■ Section 704(a) of Title VII provides that it is unlawful "for an employer to discriminate against any of his employees ... because he [the employee] has made a charge ... under this subchapter." 42 U.S.C. § 2000e–3(a). Section 4(d) of the ADEA states that it is unlawful "for an employer to discriminate against any of his employees ... because such individual ... has made a charge ... under this chapter." 29 U.S.C. § 623(d).

EEOC maintains that GM's suspension of its in-house dispute resolution procedures discriminates against salaried employees who file charges with the EEOC and against employees who may wish to file with the EEOC, but are deterred from doing so by GM's policy of denying access in violation of the above provisions. EEOC cites *EEOC v. Board of Governors of State Colleges and Univs.,* 957 F.2d 424, 427–29 (7th Cir.1992), in support of its assertion that GM may not suspend an employee benefit in response to the employee filing a charge with the EEOC. In *Board of Governors,* the court held that Section 4(d) of the ADEA prohibited a collective bargaining agreement from providing that an employee's grievance would no longer be processed if the employee filed a charge of discrimination with the EEOC. The court held that a *per se* violation of the ADEA existed when the employer took adverse ac-

tion against the employee because he filed the charge. The court ruled that:

> Section 4(d) is concerned with the effect of discrimination against employees who pursue their federal rights, not the motivation of the employer who discriminates. Section 4(d) explicitly prohibits discrimination against employees who engage in protected activity.... The employer may not proffer a good faith reason for taking retaliatory action. For example, the Board's asserted justification, ... avoiding duplicative litigation, does not rebut the claim that the Board discriminated against employees who engaged in protected activity. Rather the Board's justification alleges that non-malicious discrimination against employees ought not be legally prohibited. It is not for this court to determine when retaliation is permissible. Congress already resolved that issue.... Congress chose not to enact any affirmative defenses to a charge of retaliation, 29 U.S.C. § 623(f), and did not provide an exception to Section 4(d) when such discrimination would be rational or financially prudent. *Id.* at 427–428.

In furtherance of its position, EEOC asserts that it is immaterial that GM's activity in this instance does not concern a collective bargaining agreement, as was the case in *Board of Governors,* since Neither Title VII nor the ADEA limit their prohibitions to denials of contractual rights. *See* 42 U.S.C. § 2000e–2(a) (rendering it unlawful to discriminate with respect to "compensation, terms, conditions, or *privileges* of employment...." (emphasis added)); *Hishon v. King and Spalding,* 467 U.S. 69, 75, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984) ("[a]n employer may provide its employees with many benefits that it is under no obligation to furnish by any express or implied contract.")

Under *Board of Governors,* GM is in violation of the statutes if it discriminated against its employees for filing charges with the EEOC even if the discrimination was non-malicious or sensible, *eg.* to avoid an investigation by two different staffs—one for the in-house process and one for the EEOC process. The Seventh Circuit has determined that a literal reading of the ADEA and Title

VII sections in question is necessary based on legislative intent. *Id.* "When an employee's participation in a statutorily protected activity is the determining factor in an employer's decision to take adverse employment action, that action is invalid regardless of the employer's intent. If the employer's differential treatment of its employees is impermissible, the policy which provides for its differential treatment is invalid regardless of the employer's motivation for adopting or invoking the policy." *Board of Governors* at 428. Thus, if an employer discriminates in any form against an employee for filing a charge with the EEOC, it has violated the employee's federal rights.

To establish a *prima facie* case of retaliation, the EEOC must allege and prove that an individual suffered an "adverse employment action" by the employer. *Board of Governors*, 957 F.2d at 428; *Samuelson v. Durkee/French/Airwick*, 976 F.2d 1111, 1114–15 (7th Cir.1992.) The EEOC asserts that GM's deferring an employee's use of its "open door" policy for filing with the EEOC is an adverse action because it effectively strips a benefit from an employee for filing with the agency.[3]

GM asserts that unlike *Board of Governors*, where the employee was denied significant contractual benefits, a denial of proceeding through the "open door" policy is not adverse because, according to the policy, and unlike an arbitration proceeding as in *Board of Governors*, GM retains the prerogative at all times to determine whether and to what extent the complaint should be remedied. The fact remains, however, that the "open door" policy is a privilege granted to salaried GM employees. The fact that GM retains

the prerogative to determine a remedy without a binding obligation does not relieve GM from a *per se* violation under Title VII and the ADEA for stripping an employee of a privilege if that employee files a charge with the EEOC. Regardless of GM's control over the process once it has been initiated, or of its intent, *Board of Governors* is clear in its holding that an adverse measure such as stripping a privilege for filing a charge violates the ADEA, and thus Title VII.[4] *Board of Governors*, 957 F.2d at 428. The court found that any discriminating act, even if benign, must be held to violate the ADEA. *Id.* As the court pointed out, if a party "wants to lobby for a benign discrimination exception to Section 4(d) [of the ADEA], its appeal would be appropriately directed to Congress rather than this court." *Id.*

GM admits that an employee may proceed through its internal "open door" policy or through EEOC procedures, but not both. Such a policy adversely affects an employee by stripping him or her of an employment privilege for filing with the EEOC. Such activity is expressly prohibited by the literally interpreted provisions of both the ADEA and Title VII. This court therefore finds that GM's policy violates the ADEA and Title VII and EEOC's motion for partial summary judgment is accordingly granted.

### Defendant's Second and Third Affirmative Defenses

When the EEOC pursues a claim, it must follow certain proscribed procedures. First, it must determine, pursuant to investigating a charge, that reasonable cause exists to pursue a discrimination claim. After deter-

---

**3.** A benefit granted to an employee, while not a right of employment, is also subject to the discriminatory provisions of Title VII and the ADEA.

In *Hishon, supra,* the court held that "... a benefit, though not a contractual *right* of employment, may qualify as a 'privileg[e]' of employment under Title VII. A benefit that is part and parcel of the employment relationship may not be doled out in a discriminatory fashion, even if the employer would be free under the employment contract not to provide the benefit at all. Those benefits that comprise the 'incidents of employment,' ... or that form 'an aspect of the relationship between the employer and employ-

ees,' may not be afforded in a manner contrary to Title VII." 467 U.S. at 75–76, 104 S.Ct. at 2233 (citations omitted) (emphasis provided).

The Supreme Court has held that *Hishon* applies with equal force to the ADEA. *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985).

**4.** The violation applies to Title VII as well as to the ADEA since "... the substantive provisions of the ADEA 'were derived *in haec verba* from Title VII.'" *Trans World Airlines,* 469 U.S. at 121, 105 S.Ct. at 621 (quoting *Lorillard v. Pons,* 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978)).

mining that there is reasonable cause to believe that a charge is true, the agency must attempt to conciliate the discrimination claim with an employer before being able to bring suit in federal court. Only if the EEOC is unable to obtain an acceptable conciliation agreement from the employer, may it file suit. 42 U.S.C. § 2000e–5(b), (f)(1).

In its Second Affirmative Defense, GM alleges that the administrative and jurisdictional prerequisites to bringing suit have not been met because the EEOC failed to engage in good faith conciliation by impermissibly conditioning settlement on behalf of Mr. Irvin Talbert on meeting EEOC's demands related to persons and issues beyond the scope of Mr. Talbert's charge. In its Third Affirmative Defense, GM alleges·that the administrative and jurisdictional prerequisites to bringing suit have not been met by EEOC with respect to any person other than Irvin Talbert.

EEOC asserts that it acted within its statutory authority when it sought to conciliate on behalf of other persons affected by GM's policy.

GM asserts that it is premature to strike its affirmative defenses because EEOC has yet to identify the purported victims and the nature of the harm suffered by those victims, and thus it is impossible at this point to determine whether demands made on behalf of specific individuals are sufficiently like and related to Mr. Talbert's individual charge.

■ Under Title VII, the EEOC may seek relief for any discrimination discovered in the course of a reasonable examination of an individual charge. "[A] suit brought by the EEOC is not 'limited to discriminations that the charging party had standing to raise.'". *EEOC v. Gurnee Inn Corp.*, 914 F.2d 815, 819 n. 6 (7th Cir.1990) (quoting 1 C. Sullivan, M. Zimmer & R. Richards, Employment Discrimination § 12.4.1 at 567 (2d ed. 1988)). Thus, the EEOC may properly bring a claim based on discrimination against a class of individuals where such a claim arises out of the investigation of an individual charge. In this case, the EEOC has broadened the scope of Mr. Talbert's charge by alleging that GM has unlawfully discriminated against all of its salaried employees who file charges with the EEOC. Such a claim is permitted under the EEOC's statutory powers. *Id.; see EEOC v. Keco Inds., Inc.*, 748 F.2d 1097, 1101 (6th Cir.1984).

■ While the EEOC must attempt to conciliate before bringing suit in this court, "it is under no duty to attempt further conciliation after an employer rejects its offer." *EEOC v. Keco*, 748 F.2d at 1101–1102 (citing *EEOC v. Radiator Specialty Co.*, 610 F.2d 178, 183 (4th Cir.1979)); *EEOC v. Zia Co.*, 582 F.2d 527 (10th Cir.1978).

In this case, the EEOC attempted to conciliate with GM pursuant to its statutory obligations. Its conciliation was permissibly premised upon a class-based claim. GM rejected the conciliation attempt. EEOC had no further duty at that point to conciliate any further. Therefore, the EEOC properly met its administrative duties giving rise to proper jurisdiction in this court. Defendant's second and third affirmative defenses must accordingly be stricken.

### CONCLUSION

For the foregoing reasons, EEOC's motion for partial summary judgment is granted. Defendant GM is hereby enjoined from continuing to suspend its "open door" internal grievance process when an employee files an EEOC charge. GM is further ordered to advise its salaried employees of the above order·and to reopen its "open door" process to persons whose EEOC charges are still pending and who were denied access to the "open door" process because they had filed EEOC charges.[5] Defendant GM's Second and Third Affirmative Defenses to EEOC's complaint are hereby stricken. Defendant's motion for summary judgment is denied.

It is so ordered.

---

5. EEOC has not requested in its motion for partial summary judgment, and the court will not rule at this time, on any retroactive relief for GM employees who may have been deterred from filing with the EEOC due to the existence of the "open door" policy.