**Sharon KABES and Roger Buchholz, Plaintiffs,**

v.

**SCHOOL DISTRICT OF RIVER FALLS and SCHOOL BOARD OF RIVER FALLS, Defendants.**

No. 04–C–840–C.

United States District Court, W.D. Wisconsin.

Sept. 26, 2005.

Jacob P. Westerhof, DeWitt, Ross & Stevens, S.C., Madison, WI, for Plaintiff.

Joel L. Aberg, Weld, Riley, Prenn & Ricci, S.C., Eau Claire, WI, for Defendant.

## OPINION AND ORDER

CRABB, District Judge.

Sharon Kabes and Roger Buchholz had been administrators at a high school in the River Falls school district in Wisconsin for almost ten years when they discovered their contracts would not be renewed. In 2003, Kabes's employment with the district was terminated and Buchholz was demoted from his position at the high school to a position at a middle school. In this civil action for monetary relief, plaintiffs contend that the school district and the school board discriminated and retaliated against them because of their age in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634. Plaintiff Kabes contends also that the district and the board gave her an unfair hearing regarding her contract renewal, in violation of Wis. Stat. § 118.24.

This case is before the court on defendants' motion for summary judgment. Defendants' motion will be denied in part and granted in part. It will be denied as to plaintiff Kabes's claim that defendants discriminated against her when they failed to

interview or hire her for a new vacancy in the district and it will be granted as to all other claims either because it is barred by the doctrine of claim preclusion or because plaintiffs have not adduced any evidence from which a reasonable jury could infer that defendants failed to retain plaintiffs in their high school positions because of their age.

After defendants filed their motion for summary judgment, they filed a motion to strike certain of plaintiffs' findings of fact. I need not rule on this motion because the disputed findings of fact have no effect on the resolution of defendants' motion for summary judgment.

In determining the material and undisputed facts, I have disregarded those proposed findings of fact and responses that constituted legal conclusions, were argumentive or irrelevant, were not supported by the cited evidence or were not supported by citations specific enough to alert the court to the source for the proposal. From the parties' proposed findings of fact and the record, I find the following to be material and undisputed.

## UNDISPUTED FACTS

### A. *Parties*

Plaintiff Sharon Kabes was born on September 11, 1944 and resides in Marshall, Minnesota. She was employed by defendants School District of River Falls and School Board of River Falls until July 2003.

Plaintiff Roger Buchholz was born on July 9, 1951 and lives in River Falls, Wisconsin. He is employed by defendants.

Defendants School District of River Falls and School Board of River Falls are bodies politic with their principal places of business at 852 East Division Street, River Falls, Wisconsin.

### B. *Plaintiffs' Transfer From Their High School Positions*

The events leading up to this lawsuit began to unfold in February 2002. At the time, plaintiff Kabes worked as a high school principal in the school district of River Falls under a two-year contract that expired in June 2003. Plaintiff Buchholz worked as assistant high school principal and activities director in the same school district, also under a two-year contract that expired in June 2003. Plaintiff Kabes had worked for the district since 1995 and plaintiff Buchholz had worked for the district since 1994.

On February 18, 2002, defendant school board met to consider a recommendation from plaintiffs that the board not renew its employment contract with high school teacher Dan Julson. During the meeting, defendant school board shifted its focus from Julson to plaintiffs and expressed its concern about continuing plaintiffs' employment at the high school and within the district.

On March 20, 2002, Boyd McLarty, the district's superintendent of schools, sent plaintiffs identical letters, which stated in part:

This is to confirm our recent conversations in which we discussed your assignment for the 2002–2003 school year as well as the viability of long term employment for the River Falls School District. Please be advised that, pursuant to Article XI of the Personnel Practices for the Educational Leadership Management Team, your two-year contract will be changed. Your new assignment will be at your current salary plus any negotiated increases.

Please be further advised that, pursuant to Article XIII, Paragraph B, of the Personnel Practices for the Educational Leadership Management Team, your

two-year contract for the term 2001–2003 will not be renewed.

I thought it appropriate to give you notice at this time of the Board's concern about your lack of credibility with staff, the community and the Board itself. Indeed, your lack of credibility caused the Board not to not [sic] pursue the administration's recommendation that Band Instructor Dan Julson be non-renewed at the end of the 2001–2002 school year.

The board decided not to terminate Julson's contract. Instead, the board gave him a written reprimand, devised an improvement plan for him and froze his salary. Julson was 30 years old at the time; he was born on August 25, 1971.

On June 6, 2002, plaintiffs met with McLarty. On June 11, 2002, plaintiffs sent McLarty a memorandum to reiterate what the three of them had discussed in the June 6 meeting:

Boyd [McLarty] told us what was to be proposed Monday evening to the Personnel Committee of the Board of Education regarding reorganization. Sharon [Kabes] would go to Greenwood Elementary School and Elaine Bauman would replace her as principal of the high school. Pat McCardle would go to Roger's position next year as Assistant Principal/Activities Director. . . . Roger [Buchholz] would be transferred to the Assistant Principal position of the Meyer Middle School. . . . Boyd said that after next year we (Sharon and Roger) would be terminated. When Roger questioned the use of 'terminated', Boyd said no, the Board will non-renewal us, not terminate. Boyd said, 'The Board has told us to non-renew and that will be discussed Monday night.'

On June 20, 2002, McLarty sent a memorandum to all district staff announcing that on July 1, 2002, plaintiffs would be transferred out of the high school. Plaintiff Kabes would become the principal at an elementary school and plaintiff Buchholz would become the assistant principal at a middle school.

On July 1, 2002, defendants implemented the decisions set forth in McLarty's June 20, 2002 memorandum. Elaine Bauman replaced plaintiff Kabes as the high school principal. Bauman was born on January 14, 1951. Pat McCardle replaced plaintiff Buchholz as the assistant high school principal for the 2002–2003 school year. McCardle was born on October 21, 1950.

Defendants' written evaluations of plaintiff Kabes and plaintiff Buchholz demonstrate that plaintiffs were performing their jobs satisfactorily throughout their tenure with the district. The district awarded plaintiffs compensation increases every year they worked for the district, including the year in which the district removed plaintiffs from their high school positions.

## C. Plaintiffs' Legal Action Against Defendants

On June 26, 2002, plaintiffs filed a civil action against the district and the board in Wisconsin state court. Plaintiffs sought injunctive relief and asked to be reinstated to their respective positions at the high school.

In late September and October 2002, plaintiffs deposed various members of the board. Board member Manville Kenney was asked why Julson was given the opportunity to correct his behavior instead of being terminated. He responded that:

He was a young teacher. In my estimation he showed a lot of promise, and it was early enough in his career that it was my hope that those habits that we had found to be a problem we would be

able to catch soon enough and correct with this young man.

On November 18, 2002, plaintiffs filed employment discrimination complaints with the Equal Rights Division of the Wisconsin Department of Workforce Development. Plaintiff Kabes complained of age discrimination because she had been given a notice of nonrenewal, the board had decided not to renew her employment and she had been transferred from her position as high school principal. Plaintiff Buchholz complained of age discrimination because he had been given a notice of nonrenewal, the board had decided not to renew his employment and he had been transferred from his position as assistant principal and activities director at the high school. The complaints were filed also with the Equal Employment Opportunity Commission.

### D. *Non-renewal of Plaintiff Kabes's Contract and Demotion of Plaintiff Buchholz to the Middle School*

On January 6, 2003, McLarty completed a formal evaluation of plaintiff Kabes, affirming that she either met or exceeded district standards in each category on the evaluation form. On January 21, 2003, McLarty sent plaintiffs a preliminary notice of nonrenewal at the direction of the board. Plaintiff Kabes's notice stated that the board was considering not renewing her contract because of (1) lack of administrative leadership; (2) failure to properly manage staff, events and the building; and (3) ineffective communication with community, parents, the board and students. Plaintiff Buchholz's notice stated that the board had lost confidence in his ability to be effective at the high school primarily because of concerns about communication and working with the community, parents, board members, colleagues and students. However, it indicated that he might be

offered a position at a different school within the district.

On February 8, 2003, plaintiffs sent a letter to the board requesting a meeting to discuss potential solutions other than not renewing their contracts. Plaintiff Buchholz met separately with McLarty before meeting with the board to express his desire to continue working for the district. McLarty told plaintiff Buchholz he could not guarantee there would be any administrative openings at the end of the school year and in particular advised him that if the middle school assistant principal position did become available, it would pay less than his current salary.

On February 17, 2003, plaintiffs met with the board. Plaintiff Buchholz told the board he wanted to continue working for the district and was willing to take any position his licensure would allow. The board reiterated that it could not guarantee there would be any administrative openings at the end of the school year and asked him whether he would accept the middle school assistant principal position if offered. Plaintiff Buchholz said he would. The board indicated that the position paid less than plaintiff Buchholz's current salary.

On February 18, 2003, the state court entered an order reinstating plaintiffs to their former positions at the high school. The district and the board appealed the decision but it was affirmed. The district and the board filed a petition for review that the Wisconsin Supreme Court denied on April 20, 2004.

Also on February 18, 2003, the board sent a "proffer of employment" to plaintiff Buchholz, which did not specify what position he would be offered but stated in part:

Therefore, in order to provide a convenient standard of notification and with the understanding that any such acceptance is subject to the eventual terms of

the contract (Personnel Practices for Educational Leadership Management Team), you are requested to sign the bottom portion of this notification if you desire to accept the offered employment. *Note:* The assignment will be determined at a later date and the assignment will be within your license areas.

On February 19, 2003, Buchholz accepted the "proffer." Next to his signature he wrote: "Without waiving any of my rights, in order to avoid the necessity of a nonrenewal hearing, I accept."

On February 25, 2003, the board held plaintiff Kabes's nonrenewal hearing. She was represented at the hearing by Jacob Westerhof, a lawyer. Plaintiff Kabes believed some board members were biased against her and would not take into account any of the positive evidence she introduced at the hearing. Her attorney asked these board members plaintiff Kabes believed to be biased to recuse themselves from the hearing but they refused to do so. Plaintiff Kabes's attorney and the board's attorney exchanged correspondence ahead of time regarding the format of the hearing. Hearing officer Gwen Kuchevar presided over the meeting. Witnesses were called, examined and cross-examined at the hearing. Afterwards, the board went into closed session and voted unanimously not to renew plaintiff Kabes' contract.

On February 27, 2003, the Board sent plaintiff Kabes a letter:

Pursuant to Section 118.24 of the Wisconsin Statutes, the Board of Education issued you a Preliminary Notice of Nonrenewal on January 21, 2003. At your request, a hearing was held in open session on February 25, 2003.

Please be advised that at the conclusion of the February 25, 2003, hearing, the Board, by a unanimous vote, decided not to renew your administrative contract,

and therefore your employment, beyond June 30, 2003.

On March 31, 2003, plaintiff Buchholz sent a letter to the board which stated:

As you may be aware, I have not yet received a written contract. For this reason, in order to protect my rights, I am writing to notify the Board that I accept a two year extension of my contract pursuant to Wis. Stat. Section 118.24. I look forward to any negotiations as to the specific terms of my written contract. I am pleased to continue to serve the River Falls School District.

In May 2003, plaintiff Kabes applied to the district for the position of director of academic services. Plaintiff Kabes was qualified for that position; superintendent McLarty had told her so. The district did not invite plaintiff Kabes for a job interview. The position was offered to Brad Farrier. Farrier was born on July 9, 1960.

Plaintiff Kabes's last day of work for the district was June 30, 2003.

On July 10, 2003, plaintiff Buchholz received his assignment to the middle school for the 2003–2004 school year. Although he did not sign the assignment document, he has continued working for the district as assistant principal of the middle school.

On November 19, 2004, plaintiff Buchholz filed a complaint in Wisconsin state court contending that since July 1, 2003, he had not received the salary and benefits contractually owed to him. That case remains open.

## DISCUSSION

### A. *Standard of Review*

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to

judgment as a matter of law. Fed. R.Civ.P. 56(c); *O'Neal v. City of Chicago,* 392 F.3d 909, 910 (7th Cir.2004). In ruling on a motion for summary judgment, the court must construe the evidence, resolve factual disputes and draw inferences in the light most favorable to the non-movant. *Loeb Industries, Inc. v. Sumitomo Corp.,* 306 F.3d 469, 480 (7th Cir.2002). If the non-moving party fails to make a sufficient showing on an essential element of her case, the moving party is entitled to judgment as a matter of law. *Lewis v. Holsum of Fort Wayne, Inc.,* 278 F.3d 706, 709 (7th Cir.2002).

### B. *Claim Preclusion*

Defendants assert that plaintiffs cannot pursue their age discrimination claims because the facts underlying those claims are the same facts underlying the lawsuit plaintiffs brought in state court in June 2002. The state court ruled for plaintiffs in that lawsuit, the court of appeals affirmed and the Wisconsin Supreme Court denied certiorari. Defendants argue that plaintiffs could have litigated the age discrimination claim in the 2002 lawsuit. Thus, the doctrine of claim preclusion bars them from litigating it now.

■ The doctrine of claim preclusion bars a subsequent suit if the claim upon which the suit is based arises from the "same incident, events, transaction, circumstances, or other factual nebula" as a prior suit that has gone to final judgment. *Okoro v. Bohman,* 164 F.3d 1059, 1062 (7th Cir.1999). Because the prior suit in this case was decided in a Wisconsin state court, Wisconsin law governs the issue of claim preclusion. *United States Gypsum Co. v. Indiana Gas Co.,* 350 F.3d 623, 628 (7th Cir.2003) ("preclusive effect of a state judicial decision depends on state rather than federal law"); *Wilhelm v. County of Milwaukee,* 325 F.3d 843, 846 (7th Cir. 2003) (citing 28 U.S.C. § 1738).

■ The three requirements of claim preclusion under Wisconsin law are "(1) an identity between the parties or their privies in the prior and present suits; (2) an identity between the causes of action in the two suits; and, (3) a final judgment on the merits in a court of competent jurisdiction." *Northern States Power Co. v. Bugher,* 189 Wis.2d 541, 551, 525 N.W.2d 723, 728 (1995). There is no dispute that the first and third requirements are met.

■ To determine whether the second element is met, "Wisconsin has adopted a transactional approach to determining whether two suits involve the same cause of action." *Wiedenhoeft v. Allstate Insurance Co.,* 2004 WI App 125, 2004 WL 1171694, at *2. Under the transactional approach, which is set forth in *Restatement (Second) of Judgments* § 24 (1982), a court's goal is "to see a claim in factual terms and to make a claim coterminous with the transaction, regardless of the claimant's substantive theories or forms of relief, regardless of the primary rights invaded, and regardless of the evidence needed to support the theories or rights." *Kruckenberg v. Harvey,* 2005 WI 43, ¶ 26, 279 Wis.2d 520, 694 N.W.2d 879. Weight should be given to considerations such as "'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Id.* at ¶ 27 (quoting *Restatement* § 24(1)).

■ Defendants' assertion that plaintiffs' age discrimination claim is barred is partially correct. Plaintiffs' discrimination claim consists of three different claims. The first is that defendants discriminated against plaintiff Kabes when they refused to consider her job application in May 2003 for the position of director of academic

services. The second is that defendants discriminated against plaintiff Kabes when they decided not to renew her employment contract. The third is that defendants discriminated against both plaintiffs when they transferred them out of their positions at the high school in the middle of their contracts. The first and second claims involve incidents that are not related to the claim in the June 2002 lawsuit, which dealt solely with plaintiffs' transfer from the high school. However, the third age discrimination claim stems from the same incident at issue in the June 2002 lawsuit. As to that claim, all three requirements of claim preclusion are met.

Wisconsin courts recognize that the doctrine of claim preclusion should not be applied "to deprive a party of the opportunity to have a full and fair determination of an issue," *Desotelle v. Continental Casualty Co.*, 136 Wis.2d 13, 21–22, 400 N.W.2d 524, 527 (Ct.App.1986) (citing *Kichefski v. American Family Mutual Ins.*, 132 Wis.2d 74, 79–81, 390 N.W.2d 76, 78–79 (Ct.App.1986)), but there is no basis for invoking this exception in this case. Plaintiffs could have added the age discrimination claim to their June 2002 lawsuit after they filed their administrative complaints with the state and the EEOC.

Plaintiffs argue that they were not aware there had been age discrimination until they deposed board member Kenney on October 2, 2002, but the fact that evidence of discrimination did not surface until after plaintiffs had filed suit does not exempt them from the doctrine of claim preclusion. Plaintiffs could have joined the age discrimination claim shortly after the October 2002 deposition. If plaintiffs could bring new lawsuits every time new evidence was discovered, no judgment would ever be truly final. "[A] claim can be barred even though the plaintiff seeks remedies or forms of relief that were not demanded in the former action. '[A]ll claims arising out of one transaction or factual situation are treated as being part of a single cause of action, and they are required to be litigated together.'" *Brye v. Brakebush*, 32 F.3d 1179, 1183 (7th Cir. 1994) (quoting *Parks v. City of Madison*, 171 Wis.2d 730, 735, 492 N.W.2d 365, 368 (Ct.App.1992)). Plaintiffs are barred from bringing the claim that defendants discriminated against them when they transferred them out of the high school. Defendants' motion for summary judgment will be granted with respect to this claim.

### C. Age Discrimination

The Age Discrimination in Employment Act makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623. Plaintiff Kabes contends that defendants discriminated against her when they failed to (1) renew her employment contract and (2) hire her for the position of director of academic services.

A plaintiff bringing a claim under the ADEA may attempt to prove her case directly or through the burden-shifting method first established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Olson v. Northern FS, Inc.*, 387 F.3d 632 (7th Cir.2004). Under either the direct or indirect method, plaintiff must prove that her age played a role in defendant's decision making process and was determinative in the outcome. *Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569, 573 (7th Cir.2003). Summary judgment is inappropriate if plaintiff offers evidence from which an inference of discrimination may be drawn. *Miller v. Borden, Inc.*, 168 F.3d 308, 312

(7th Cir.1999). In this case, plaintiff has presented arguments under both methods of proof. I will address each in turn.

## 1. *Direct method*

█ Under the direct method of proof, plaintiff must present direct evidence (an acknowledgment of discriminatory intent by defendant), *Gusewelle v. City of Wood River*, 374 F.3d 569, 574 (7th Cir.2004), or construct a "convincing mosaic" of circumstantial evidence that provides the basis for an inference of intentional discrimination, *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 (7th Cir.2003).

█ The Court of Appeals for the Seventh Circuit has identified three different types of circumstantial evidence that may show intentional discrimination. *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir.1994). "The first consists of suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group and other bits and pieces from which an inference of discriminatory intent might be drawn." *Id.* The second type of evidence is that which shows the systematically better treatment of employees similarly situated to the plaintiff other than in the forbidden characteristic. *Id.* The third type of evidence is that which shows the plaintiff was qualified for the job but was "passed over in favor of (or replaced by) a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief, a mere pretext for discrimination." *Id.* Regardless of the form it takes, circumstantial evidence must "point directly to a discriminatory reason for the employer's action." *Adams v. Wal–Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir.2003).

### a. Failure to renew plaintiff Kabes' employment contract

█ Plaintiff Kabes contends that defendants discriminated against her because of her age when they decided not to renew her contract. She asserts that she has direct evidence of discrimination. In the course of a deposition in October 2002, board member Kenney stated that he thought it was appropriate to not terminate Julson because "he was a young teacher. In my estimation he showed a lot of promise, and it was early enough in his career that it was my hope that those habits that we had found to be a problem we would be able to catch soon enough and correct with this young man." Plaintiff Kabes asserts that this statement constitutes an admission by the district that it gave Julson a second chance "all because Julson was young" and this admission "constitutes direct evidence of age discrimination." Plts.'s Br., dkt. # 16, at 6.

Plaintiff Kabes cites *Jordan v. City of Gary*, 396 F.3d 825, 831 (7th Cir.2005), in which the court held that direct evidence "essentially requires an admission by the decisionmaker that his actions were based on the prohibited animus." However, plaintiff Kabes is incorrect to conclude that Kenney's statement is an admission by the district. First, it is the opinion of one board member. Kenney spoke in the first person, saying "my estimation," and "it was my hope." Plaintiff cannot impute Kenney's statements to the entire board and district.

Second, even if Kenney's statement did amount to an admission by defendants that they retained Julson because he was young, that admission would not support plaintiff Kabes' conclusion that defendants discriminated against her because of her age. Kenney made his statement during a deposition in October 2002, in conjunction with plaintiffs' lawsuit in state court. The

deposition took place before defendants made their final decision to terminate plaintiff Kabes in February 2003. Most important, the statement does not indicate the presence of discriminatory animus in the decision not to renew plaintiff Kabes.

Plaintiff cites *Fuka v. Thomson Consumer Electronics,* 82 F.3d 1397, 1403 (7th Cir.1996), and *Cianci v. Pettione Corp.,* 152 F.3d 723, 727 (7th Cir.1998), but neither of these cases supports her position. In *Fuka,* 82 F.3d at 1403, the Court of Appeals for the Seventh Circuit stated that "before seemingly stray workplace remarks will qualify as direct evidence of discrimination, the plaintiff must show that the remarks 'were related to the employment decision in question.' " (Citation and quotations omitted). "If such proof is lacking, the remarks alone will not give rise to an inference of discrimination even when uttered by the ultimate decisionmaker." *Id.* In *Fuka,* the plaintiff showed that her former employer had stated explicitly several times that he preferred to hire young people. The court found that although the employer's statements might have revealed an age bias in hiring decisions, plaintiff had "not shown that a similar age bias affected management's treatment of existing [employees]." *Id.* at 1404. The court concluded that the plaintiff "failed to establish any nexus between the statements of her superiors and [their] subsequent decision to terminate her employment." *Id.*

In *Cianci,* 152 F.3d at 727, the court found an employee's former supervisor had commented on several occasions that the employee was "getting too old for the job." The employee was transferred to a different department and a new supervisor. About two or three months after the transfer, her new supervisor fired her. The court held that her former supervisor's "comments are not sufficiently related to

the decision to discharge [plaintiff] to create an inference of discrimination." *Id.* The court went on to say that "comments cannot defeat summary judgment in favor of an employer unless they are both proximate and related to the employment decision in question." *Id.* (citing *Bahl v. Royal Indemnity Co.,* 115 F.3d 1283, 1293 (7th Cir.1997)). In the present case, Kenney's comment about Julson was neither proximate or related to defendants' decision to terminate plaintiff Kabes's employment. It was a statement about defendants' decision not to terminate another employee. Even if Kenney's deposition statements about Julson were admissible, they would not constitute direct evidence of discrimination.

▮ Plaintiff Kabes contends that she has circumstantial evidence that defendants discriminated against her because of her age when they did not renew her contract. One type of circumstantial evidence is that which shows the systematically better treatment of employees similarly situated to the plaintiff other than in the forbidden characteristic. *Troupe,* 20 F.3d at 736.

▮ Plaintiff Kabes alleges that Julson, who was much younger than she, received better treatment. The board did not terminate Julson even though plaintiff Kabes provided multiple reasons why his contract should not be renewed. The board followed its procedures with respect to progressive discipline, giving Julson a written reprimand, placing him on an improvement plan and freezing his salary. In contrast, in plaintiff Kabes's case, the board skipped all of these steps and simply announced that it did not intend to renew her contract. The board made no attempt to give plaintiff Kabes a second chance as it had for Julson. Contrary to plaintiff Kabes's belief, these facts do not show

better treatment of a similarly situated employee.

 To meet her burden of showing that another employee was similarly situated, plaintiff must show that he is "directly comparable to her in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir.2002); *see also Bogren v. Minnesota*, 236 F.3d 399, 404 (8th Cir.2000) (probationary state trooper not similarly situated to non-probationary state trooper); *McKenna v. Weinberger*, 729 F.2d 783, 789 (D.C.Cir. 1984) (female probationary employee not similarly situated to male permanent employee). The only similarity between plaintiff Kabes and Julson was their common employer. Julson was one of many teachers at the high school and was responsible only for his subject matter. Plaintiff was principal of the high school. In that capacity, she was in charge of overseeing the operations of the entire school. Her obligations were materially different from those of Julson, making it reasonable that an employer would have different expectations for each of them. For purposes of proving discrimination, plaintiff Kabes and Julson were not similarly situated.

 Finally, under the third category of circumstantial evidence, plaintiff Kabes attempts to establish that she was qualified for the job but was replaced by a younger person. It is impossible for her to establish this because she was not replaced by a younger person. In an age discrimination case, the plaintiff does not need to show that the retained employees were outside the class of persons protected by the ADEA; instead, she must show only that the retained employees were "substantially younger" than her. *Balderston v. Fairbanks Morse Engine Div. of Coltec Industries*, 328 F.3d 309, 321 (7th Cir.2003). "Substantially younger" in this context requires at least a ten-year age difference. *Fisher v. Wayne Dalton*, 139 F.3d 1137, 1141 (7th Cir.1998). The employee who replaced plaintiff Kabes as high school principal was only six years and three months younger than she. "In cases where the disparity is less [than ten years], the plaintiff still may present a triable claim if she directs the court to evidence that her employer considered her age to be significant." *Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 893 (7th Cir. 1997). This evidence is likely to be direct evidence. *Id.* Because plaintiff Kabes has not submitted any direct evidence that defendant considered her age to be significant, her argument fails.

In sum, plaintiff has presented no direct or circumstantial evidence from which a reasonable jury could infer that she was the victim of age discrimination when the board decided not to renew her employment contract. Before analyzing this claim under the indirect method of proof of discrimination, I turn to plaintiff's claim that defendants discriminated against her because of her age when they failed to hire her for the director of academic services position.

b. Failure to hire plaintiff Kabes for the director of academic services position

Plaintiff Kabes contends that defendants discriminated against her because of her age when they failed to interview or hire her for the director of academic services position. She attempts to prove this by introducing circumstantial evidence. Defendants do not dispute that plaintiff Kabes was qualified for the position of director of academic services. Plts.' PFOF, dkt. # 18, at ¶¶ 71–75. Also, it is undisputed that she was passed over in favor of Brad Farrier, who was twenty-eight years younger. (Farrier was thirty-three at the time he was hired.) There-

fore, the question is whether defendants' stated reason for the difference in treatment is unworthy of belief, a mere pretext for discrimination. *Troupe*, 20 F.3d at 736. Defendants contend that they did not want to hire plaintiff Kabes for the new position "because the performance deficiencies identified by the Board in her nonrenewal were critical skills needed to be an effective Director working with the whole school system." Dfts.' PFOF, dkt. # 11, at ¶ 52. Those deficiencies were (1) lack of administrative leadership; (2) failure to properly manage staff, events and the building; and (3) ineffective communication with students, parents, board and community. These are legitimate, non-discriminatory reasons for not wanting to re-hire a former employee. However, plaintiff Kabes asserts that defendants' proffered reasons for not hiring her are a pretext for discrimination.

"Summary judgment is appropriate only if a reasonable fact finder would be compelled to believe [defendants'] explanation, *Venters v. City of Delphi*, 123 F.3d 956, 973 (7th Cir.1997), and [plaintiff] can avoid summary judgment by pointing to specific facts that place defendants' explanation in doubt." *Culver v. Gorman & Company*, 416 F.3d 540, 547–48 (7th Cir. 2005) (citing *Zaccagnini v. Chas. Levy Circulating Co.*, 338 F.3d 672, 676 (7th Cir. 2003)). The question is not whether defendants' evaluation of the employee was correct but whether it was honestly believed. *Id.* (citing *Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 602 (7th Cir. 2001)). In fact, "an employer's explanation can be 'foolish or trivial or even baseless' so long as it 'honestly believed' the proffered reasons for the adverse employment action." *Id.* (citing *Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 890 (7th Cir.1997)).

Plaintiff Kabes may establish pretext either "by presenting direct evidence that her [age] played a role in the challenged action or indirectly by creating a genuine issue of material fact regarding the sincerity of the proffered reason for that action." *Freeman v. Madison Metropolitan School Dist.*, 231 F.3d 374, 379 (7th Cir.2000). To establish pretext indirectly, "a plaintiff must show that the employer's proffered explanation is factually baseless, not the actual motivation for the decision, or insufficient to support the decision." *Dyrek v. Garvey*, 334 F.3d 590, 598 (7th Cir.2003).

Although plaintiff Kabes must show that there is genuine issue of material fact as to whether defendants honestly believed their stated reason for not hiring her, she is not required at the summary judgment stage to prove conclusively that defendants discriminated against her because of age. *Rudin v. Lincoln Land Community College*, 420 F.3d 712, 726 (7th Cir.2005). "This level of proof is only required when a plaintiff's case is submitted to a finder of fact." *Id.* (citing *Mills v. Health Care Service Corp.*, 171 F.3d 450, 458 (7th Cir.1999)). "In other words, if there is a question of fact as to the believability of an employer's purported reasons for an employment decision then, 'even if the evidence presented by [the plaintiff] does not compel the conclusion that [her employer] discriminated against [her] when making its decision, at a bare minimum it suffices to defeat [the employer's] summary judgment motion.'" *Rudin*, 420 F.3d at 726 (citing *Courtney v. Biosound*, 42 F.3d 414, 423 (7th Cir.1994)).

Plaintiff Kabes advances the following arguments to show that defendants' proffered reasons for not hiring her are factually baseless and not the actual motivation for their decision. First, she argues that one can infer pretext from the fact that

she was more qualified than the candidate who was hired. "However, plaintiff's own opinion that her record supercedes that of the [candidate who was hired] is not enough in and of itself to establish pretext." *Farrell v. Butler University*, 421 F.3d 609, 615 (7th Cir.2005); *see also Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180 (7th Cir.2002) (holding that evidence of plaintiff's competing qualifications does not constitute evidence of pretext unless those differences are "so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue.").

■ Plaintiff Kabes provides insufficient evidence to show that she was more qualified than Farrier for the director of academic services position. General assertions about the competing candidate are not enough, particularly when plaintiff has no personal knowledge of those qualifications. *James v. Sheahan*, 137 F.3d 1003, 1007 (7th Cir.1998) ("[S]elfserving assertions without factual support in the record will not defeat a motion for summary judgment."); *see also Mills v. First Federal Savings & Loan Association*, 83 F.3d 833, 841–42 (7th Cir.1996) ("[I]f the subjective beliefs of plaintiffs in employment discrimination cases could, by themselves, create genuine issues of material fact, then virtually all defense motions for summary judgment in such cases would be doomed."). Although plaintiff's qualifications are impressive, they do not rise above the burden that *Millbrook* imposes.

■ Plaintiff Kabes offers a second reason to question the honesty of defendants' explanation for not hiring her for the new position. She contends that it is doubtful that defendants honestly thought she lacked leadership, management and communication skills in light of the fact that every single performance review she received was positive.

In March 2002, defendants sent plaintiff Kabes a letter in which superintendent McLarty explained that the board was planning to transfer her from the high school to the elementary school. He also stated that "I thought it appropriate to give you notice at this time of the Board's concern about your lack of credibility with staff, the community and the Board itself." Dfts.' PFOF, dkt. # 11, at ¶ 8. However, both before and after March 2002, plaintiff's performance evaluations were consistently positive and did not suggest she needed to improve or modify her performance in any way. Moreover, defendants gave plaintiff Kabes a salary increase every year of her employment, including the year they transferred her from the high school to the elementary school, an action they took after defendants sent her the March 2002 letter alleging her lack of credibility.

On January 6, 2003, superintendent McLarty completed a formal evaluation of plaintiff Kabes and affirmed in each category in the evaluation form that she either met or exceeded district standards. Two weeks later, the board told plaintiff Kabes in writing that it was considering not renewing her because of her lack of leadership, management and communication skills. In February 2003, the board decided not to renew her contract and in May 2003 the board decided not to interview her for the new position, allegedly for those same reasons.

■ Defendants fail to provide a single example of an incident that supports or illustrates their purported opinion that plaintiff Kabes lacked leadership, management and communication skills. Also, defendants did not deny that her performance record was uniformly positive. This sudden dissatisfaction casts doubt over the

honesty of defendants' belief that plaintiff Kabes had those flaws. *Culver*, 416 F.3d at 547–48. In *Culver*, the Court of Appeals for the Seventh Circuit found that defendant's alleged reasons for firing plaintiff were pretextual. In that case, defendant refused to elaborate on his reasons during his deposition. *Id.* The court held that "a reasonable jury could determine that [defendant's] silence indicated that this explanation was pretextual." *Id.* at 549. This is not to suggest that defendants needed to put forth detailed proof that they honestly believed plaintiff Kabes lacked administrative, managerial and communication skills. "A reason honestly described but poorly founded is not a pretext as that term is used in the law of discrimination." *Balderston v. Fairbanks Morse Engine Division of Coltec Industries*, 328 F.3d 309, 324 (7th Cir.2003). But defendants cannot simply state a reason that contradicts all other facts in the record and not provide one single fact to support it. Generally, the jury is permitted to infer discriminatory intent from an employer's false explanation. *Reeves*, 530 U.S. at 147, 120 S.Ct. 2097 ("[O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision."). Viewing all facts in the light most favorable to plaintiff and drawing all inferences in her favor, I conclude that a rational jury could conclude that defendants were not truthful about their proffered reasons for not wanting to hire plaintiff Kabes as director of academic services.

## 2. *Indirect method*

Under the indirect method of proving unlawful discrimination, plaintiff has the initial burden to establish a prima facie case of discrimination. *Ransom v. CSC Consulting, Inc.*, 217 F.3d 467, 470 (7th

Cir.2000). If a plaintiff makes out a prima facie case, she is entitled to "a presumption that the employer unlawfully discriminated against the employee." *EEOC v. Our Lady of the Resurrection Medical Center*, 77 F.3d 145, 148 (7th Cir.1996) (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). Once the plaintiff has met this burden, the defendant has the burden of rebutting the presumption by coming forward with a legitimate nondiscriminatory reason for the discharge. *Pitasi v. Gartner Group, Inc.*, 184 F.3d 709, 716 (7th Cir.1999). If the defendant satisfies this standard, the plaintiff must demonstrate that there is a genuine issue of material fact whether the defendant's stated reason for plaintiff's termination is pretextual in order to defeat a motion for summary judgment. *Hudson v. Chicago Transit Authority*, 375 F.3d 552, 561 (7th Cir.2004). Although the burden of production shifts under the indirect method, the ultimate burden of persuasion rests with the plaintiff. *Pitasi*, 184 F.3d at 716.

Under the indirect method, plaintiff must first establish a prima facie case of discrimination. *Radue v. Kimberly–Clark Corp.*, 219 F.3d 612, 617 (7th Cir.2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). In an age discrimination case, the plaintiff must show that (1) she was in the protected age group of 40 or older; (2) she was performing her job satisfactorily or was qualified for the job for which she applied; (3) she suffered an adverse employment action; and (4) other similarly situated employees who were substantially younger than she was were treated more favorably. *Radue*, 219 F.3d at 617; *Hartley*, 124 F.3d at 890.

The only claim I need to analyze under the indirect method is plaintiff Kabes's claim that defendants discriminated

against her because of her age when they decided not to renew her contract because I have concluded that plaintiff Kabes adduced evidence sufficient to defeat summary judgment with respect to her claim that defendants discriminated against her when they failed to interview or hire her for the new position using the direct method.

The parties do not dispute that plaintiff Kabes meets the first and third elements of the prima facie case. Defendants deny that she was performing her job satisfactorily, although as previously discussed, their conclusory assertions about her lack of administrative, managerial and communication skills find no foundation in the record. However, even if I find that plaintiff Kabes was performing her job satisfactorily, she fails to establish a prima facie case because she does not meet the fourth requirement. As I have already discussed, plaintiff Kabes fails to show that other similarly situated employees who were substantially younger than her were treated more favorably. Because plaintiff Kabes is unable to establish a prima facie case, her claim that she was discriminated against because of her age when defendants decided to not renew her contract also fails under the indirect method. For this reason I will grant defendants' motion for summary judgment on this claim.

### D. Retaliation

Under 29 U.S.C. § 623(d), the retaliation provision of the Age Discrimination in Employment Act, it is unlawful for an employer to "discriminate against any of his employees" because the employee "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." The ADEA prohibits an employer from discriminating against an employee opposing an unlawful employment practice. *Brenner v. Brown*, 36 F.3d 18, 19 (7th Cir.1994).

As with other employment-related claims, a plaintiff may proceed with a claim of retaliation pursuant to either the direct or indirect method. *Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 797 (7th Cir.2005) (citing *Luckie v. Ameritech Corp.*, 389 F.3d 708, 714 (7th Cir.2004)).

### 1. Direct method

■■■ To prevail on a claim of retaliation using the direct method, a plaintiff must show that (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *Brenner*, 36 F.3d at 19 (citing *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 321 (7th Cir.1992)).

### a. Failure to renew plaintiff Kabes's employment contract

■■■ Plaintiff Kabes argues that defendants did not renew her contract in retaliation for her filing a complaint of age discrimination with the Wisconsin Department of Workforce Development. There is no dispute that plaintiff satisfies the first and second requirements under the direct method. However, plaintiff has not provided any causal connection between the filing of her complaint and defendants' decision to not renew her contract. A plaintiff can show a causal connection either with direct evidence or by presenting facts from which inferences of causation may be drawn. *Samuelson v. Durkee/French/Airwick*, 976 F.2d 1111, 1115 (7th Cir.1992). Defendants notified plaintiff Kabes of their intent not to renew her contract before she filed her administrative complaint. Even though the official decision not to renew her contract was made about five months after she filed the complaint, defendants told her before she filed it that they did not intend to renew her contract. A court

may not infer causation when the protected activity occurred after defendants had already expressed their intent to undertake the adverse action. Because a reasonable jury could not infer a causal link between plaintiff Kabes's filing of the complaint and defendants' decision not to renew her contract, plaintiff has failed to make a showing of retaliation under the direct method.

**b. Failure to interview or hire plaintiff Kabes for a new position**

■ Plaintiff Kabes contends that defendants retaliated against her for filing the age discrimination complaint when they refused to interview her or hire her for the director of academic services position. Resolution of this claim depends on whether plaintiff can show any causal connection between the two events. Other than plaintiff Kabes's conclusory allegations that defendants' actions were retaliatory, nothing in the record implies a causal link between the two occurrences. A reasonable jury could conclude from the record that defendants harbored negative feelings towards plaintiff Kabes and did not want her to work for them anymore. Defendants set forth their opinions in their allegations that she lacked administrative, managerial and communication skills. These were the same allegations defendants had made before she filed the complaint. Plaintiff Kabes has not proffered any facts from which an inference can be drawn that a causal link exists between the filing of the administrative complaint and defendants' failure to interview or hire her for the director of academic services position. Therefore she fails to show retaliation under the direct method.

**c. Failure to give plaintiff Kabes a fair nonrenewal hearing**

■ Plaintiff Kabes contends that defendants retaliated against her for filing the age discrimination complaint by failing to provide her with a fair nonrenewal hearing. The parties propose few undisputed facts regarding the hearing, and from those I cannot conclude that it was a sham, as plaintiff Kabes believes. Moreover, plaintiff Kabes provides no authority to support her assumption that an unfair nonrenewal hearing amounts to an adverse employment action. The Court of Appeals for the Seventh Circuit has defined an adverse employment action as a "materially adverse change in the terms and conditions of employment [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993). Defendants' nonrenewal of plaintiff Kabes's contract constitutes an adverse employment action. A purportedly unfair nonrenewal hearing does not. Consequently, this claim fails under the direct method.

**d. Reduction of plaintiff Buchholz's salary**

Plaintiff Buchholz alleges that his salary was reduced as of July 1, 2003, in retaliation for his having filed a complaint of age discrimination with the Wisconsin Department of Workforce Development. Plaintiff Buchholz did not proffer any facts to support this claim in his proposed findings of fact. It was defendants who provided the undisputed facts that plaintiff Buchholz and defendants exchanged correspondence regarding what his employment status would be after July 1, 2003. From what little information I could gather from defendants' proposed findings of fact, plaintiff Buchholz and defendants made different assumptions about what his salary would be after July 1, 2003. That contractual dispute is the subject of an ongoing lawsuit in state court and is not before this

court. The only matter before this court is whether the reduction in salary amounts to retaliation.

It is undisputed that plaintiff Buchholz engaged in statutorily protected activity by filing an administrative complaint. However, the parties' proposed findings of fact do not provide any specific information regarding his salary. In the amended complaint, plaintiff Buchholz alleged that his salary at the high school was $67,190 and his current salary is $62,180. In plaintiffs' brief, they conceded that the reduction in plaintiff Buchholz's salary is not an adverse employment action. Plts.' Br., dkt. # 16, at 13 n. 5. Consequently, plaintiff Buchholz fails to show retaliation under the direct method.

### 2. *Indirect method*

 In order to prevail on a claim of retaliation using the indirect method, plaintiff must show that (1) she engaged in statutorily protected activity; (2) she was performing her job according to defendant's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Luckie*, 389 F.3d at 714.

### a. Failure to renew plaintiff Kabes's employment contract

Plaintiff Kabes's retaliation claim fails under the indirect method because she does not satisfy the fourth requirements, as previously discussed. Therefore, I will grant defendants' motion for summary judgment on this claim.

### b. Failure to interview or hire plaintiff Kabes for the new job

 As with the previous claim, this claim does not stand under the indirect method because plaintiff Kabes does not fulfill the fourth requirement. A plaintiff must show comparable circumstances in order to support an inference of discriminatory intent. *Haywood v. Lucent Technologies, Inc.*, 323 F.3d 524, 530 (7th Cir.2003). To do this, the plaintiff must show that the individuals identified by plaintiff as similarly situated are "directly comparable to her in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir.2002). To fulfill this requirement, plaintiff Kabes would have to compare herself to other employees who were terminated by defendants from one position and applied for a new position and who did not file an age discrimination complaint against defendant. Since plaintiff Kabes does not contend that any such employees existed, it is impossible for her to meet this requirement. Therefore, I will grant defendants' motion for summary judgment on this claim.

### c. Failure to give plaintiff Kabes a fair nonrenewal hearing

As already discussed, plaintiff Kabes did not adduce sufficient evidence that her nonrenewal hearing was unfair or that it constituted an adverse employment action. Consequently, plaintiff's retaliation claim does not stand under the indirect method and I will grant defendants' motion for summary judgment on this claim.

### d. Reduction of plaintiff Buchholz's salary

Even if plaintiff Buchholz meets the first three requirements of the indirect method, he fails to establish a claim of retaliation because he does not meet the fourth requirement. He does not proffer any facts comparing himself to similarly situated employees who did not engage in statutorily protected activity and were treated more favorably. Since he cannot show

retaliation under the indirect method, I will grant defendants' motion for summary judgment on this claim.

### E. *Due Process and Wis. Stat. § 118.24*

In the amended complaint plaintiff Kabes alleges in the amended complaint that her nonrenewal hearing violated Wis. Stat. § 118.24 and her due process rights under the Wisconsin and federal constitutions. However, in their brief in opposition to defendants' motion for summary judgment, plaintiffs concede that "the District's provision of an unfair nonrenewal hearing are more appropriately addressed based upon the requirements of § 118.24 rather than due process." Plts.' Br., dkt # 16, at 23 n. 8. From this statement and the lack of any discussion of a due process claim, I conclude that plaintiff Kabes has withdrawn her claim that defendants' actions violated her due process rights under the Wisconsin constitution or the federal constitution.

 Generally, a federal court has jurisdiction to hear a case in three instances: (1) when the complaint raises a federal question, 28 U.S.C. § 1331; (2) when the parties are citizens of different states and the amount in controversy is greater than $75,000, 28 U.S.C. § 1332; and (3) when a state law claim is part of the same case or controversy as a federal law claim that may be considered under § 1331, 28 U.S.C. § 1367. Plaintiff Kabes's claim that defendants violated Wis. Stat. § 118.24 does not fall into any of these categories.

 When plaintiff Kabes withdrew the argument that her nonrenewal hearing violated her federal constitutional rights, her claim became purely a matter of state law. For the court to exercise diversity jurisdiction, plaintiff must submit evidence that the parties are of diverse citizenship. "[R]esidence and citizenship are not syn-onyms and it is the latter that matters for purposes of the diversity jurisdiction." *Meyerson v. Harrah's East Chicago Casino*, 299 F.3d 616, 617 (7th Cir.2002). "Citizenship for purposes of the diversity jurisdiction is domicile, and domicile is the place one intends to remain." *Dakuras v. Edwards*, 312 F.3d 256, 258 (7th Cir.2002). As the party bringing the claim, plaintiff Kabes has the burden to show that she and defendants are citizens of different states. In this case, plaintiff Kabes asserted only that she is a resident of Minnesota; diversity jurisdiction would require her to show that she is a citizen of Minnesota.

 Finally, I decline to exercise supplemental jurisdiction over this claim. The determination whether a federal court should exercise pendent claim jurisdiction over state claims is governed by *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The court must determine whether it has the constitutional power to decide the state law questions. This test is met if the state and federal claims are part of one constitutional "case"; that is, if they derive from a "common nucleus of operative fact" and would ordinarily be tried together. *Id.* at 725, 86 S.Ct. 1130. If that test is met, the court must determine whether it is appropriate to exercise its constitutional power to decide the state law claims. This is a discretionary determination based on considerations of judicial economy, convenience and fairness. *Id.* at 726, 86 S.Ct. 1130.

 In this case, the only claim to survive summary judgment in this case is plaintiff Kabes' claim that defendants discriminated against her because of her age when they failed to consider her for the position of director of academic services. Her state law claim concerns the nature of her nonrenewal hearing and rests on a different set of facts. Therefore, supple-

mental jurisdiction does not extend to the state law claim and defendants' motion for summary judgment will be granted as to this claim. If plaintiff Kabes wishes to pursue her state law claim, she may do so in state court.

## ORDER

IT IS ORDERED that

1. The motion for summary judgment filed by defendants School District of River Falls and School Board of River Falls is DENIED with respect to plaintiff Sharon Kabes's claim that defendants discriminated against her when they failed to interview and hire her for the position of director of academic services.

2. The motion for summary judgment filed by defendants School District of River Falls and School Board of River Falls is GRANTED with respect to all other claims.